IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 16, 2019

## JUSTIN C. HOWELL v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Williamson County**
**No. 170128   Michael Binkley, Judge**

_____

### No. M2018-02050-CCA-R3-PC

_____

The Petitioner, Justin C. Howell, appeals the Williamson County Circuit Court's denial of his petition for post-conviction relief, arguing he received ineffective assistance of counsel.  After review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Matthew J. Crigger, Brentwood, Tennessee, for the appellant, Justin C. Howell.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; and Kim R. Helper, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The Petitioner was indicted for three counts of aggravated kidnapping, one count of especially aggravated kidnapping, four counts of aggravated robbery, four counts of aggravated assault, one count of aggravated burglary, and one count of theft over $1000 arising out of his involvement in a home invasion during which the occupants were threatened with weapons and property was stolen.  The Petitioner entered a negotiated plea agreement whereby he pled guilty to the four counts of aggravated robbery and one count of aggravated burglary in exchange for a sentence of eleven years and dismissal of

the remaining charges. The trial court accepted the agreement and entered judgments on February 18, 2016.

The post-conviction history in this case is extensive. On February 21, 2017, the Petitioner's father filed a post-conviction petition on his son's behalf in which he alleged, among other things, ineffective assistance of counsel. Subsequently, on March 20, 2017, the Petitioner filed a pro se petition for relief that he titled as an amended petition, in which he alleged, among other things, ineffective assistance of counsel. Presumably unaware the amended petition had been filed, the post-conviction court entered an order on March 30, 2017, dismissing the original petition filed by the Petitioner's father, reasoning that the petition was filed after the statute of limitations expired, that it could not be filed by the Petitioner's father, and that the Petitioner did not sign the petition. On April 10, 2017, the Petitioner filed a pro se motion to alter judgment, asserting that the post-conviction court was in error in dismissing the petition for untimeliness because the judgments did not become final until March 20, 2016, and failing to consider his pro se petition. Thereafter, on April 21, 2017, the Petitioner filed a pro se notice of appeal.

On May 1, 2017, the post-conviction court entered a preliminary order, finding that the petition stated a colorable claim for relief and appointing counsel. That same day, the post-conviction court entered another order in which it set aside its March 30, 2017 order dismissing the petition, finding that the Petitioner remedied the deficiencies in the original petition with the amended petition.

On May 22, 2017, the post-conviction court appointed counsel to represent the Petitioner on his pro se appeal of the dismissal of the original petition for post-conviction relief. On June 19, 2017, this court entered an order approving the voluntary dismissal of the initial appeal. Finally, on September 12, 2017, the post-conviction court reacquired jurisdiction when it entered an order reaffirming and incorporating by reference its May 1, 2017 preliminary order.

The Petitioner filed a second amended petition for post-conviction relief on December 18, 2017. In this petition, he specifically alleged, relevant to this appeal, that he received ineffective assistance of counsel because counsel failed to file a motion to suppress phone records that were seized without a warrant and alleged to link him to the crimes.

The post-conviction court conducted an evidentiary hearing at which former Brentwood Police Department officer Alan Keller testified that he was the lead detective in the investigation of the home invasion that was the factual basis for the Petitioner's convictions. Officer Keller recalled that later in the day of the home invasion, credit cards taken from the home were used at multiple businesses in the Nashville area,

including a Walmart. Surveillance footage from two of the businesses showed four individuals trying to use the credit cards. At some point, one of the individuals called American Express from inside the Walmart in an attempt to get one of the stolen credit cards to work. American Express provided the number that made this call to Officer Keller, and he subsequently made a request to AT&T to get the information associated with the number that made the call. Officer Keller identified an "Exigent Circumstances" form provided by AT&T that he had to fill out for his request to be honored.

Officer Keller stated that AT&T provided the records and those records revealed the "name on the phone holder account," which was the Petitioner's father. Through his investigation, Officer Keller determined that "Lewis Binoca," a user on the account, was the Petitioner. In addition, the information provided by AT&T listed the phone numbers called by the number being investigated. Officer Keller said that he did not contemplate obtaining a search warrant for the records because one was not required at the time. Officer Keller indicated that even without the request made to AT&T, the Petitioner would have still been developed as a suspect because another detective obtained a search warrant that covered the same information. Officer Keller recalled that the exigent circumstances he relied upon for the request was that the case involved "a home invasion where violence was perpetrated on the homeowner." However, he admitted that the request was made more than 24 hours after the incident and that the particular crimes were no longer occurring.

On cross-examination, Officer Keller elaborated on the search warrant that was later obtained by another detective. He said that Detective Valley of the Metro Nashville Police Department obtained one of the Petitioner's co-defendants' records, and those records documented calls made between the Petitioner and his co-defendant.

Trial counsel testified that she had practiced law for 18 years, 15 of which were focused on criminal law. She was retained by the Petitioner's family to represent him. Once she began representation of the Petitioner, she obtained the services of an investigator and went over the materials produced by her investigator with the Petitioner. She also discussed the discovery received from the State with the Petitioner and provided him with copies.

Trial counsel testified that as part of her investigation, she looked into the phone records produced by AT&T to determine whether they were legally obtained and whether they were valid or constituted "junk science" when used to track the Petitioner's location. After researching the issue, she did not file a motion to suppress the phone records because her research did not reveal any precedent invalidating the use of the statute relied upon by Officer Keller to obtain the records. She read Riley v. California, 573 U.S. 373 (2014), as part of her research. She understood Riley to prohibit warrantless searches of

information stored on cell phones, but she did not view Riley as prohibiting the collection of account data from a wireless provider and noted a federal statute that contemplated the collection of cell phone information without a search warrant. Trial counsel agreed that the cell phone records obtained from AT&T were critical in determining the Petitioner's identity.

On cross-examination, trial counsel elaborated that she did not feel that the Petitioner would have had standing to challenge the seizure of the cell phone records. Her research into the issue led her to conclude that any motion to suppress the records would have been unsuccessful. Trial counsel told the Petitioner of her conclusions and her plan not to file a motion to suppress.

At the conclusion of the hearing, the post-conviction court entered an order denying relief. In making this determination, the court explicitly found that the Petitioner's father was the owner of the account for which records were obtained and therefore that the Petitioner had no reasonable expectation of privacy in an account in which his father was the account owner. In light of this, the court concluded that trial counsel was not deficient in failing to file a motion to suppress the phone records. The court also noted the Petitioner's urging to apply retroactively the case of Carpenter v. United States, 138 S. Ct. 2206 (2018), but determined that it would not hold counsel responsible for case law that was not governing precedent when she represented the Petitioner.

## **ANALYSIS**

The Petitioner argues that the post-conviction court erred in denying his petition because he received ineffective assistance of counsel due to counsel's failure to file a motion to suppress "the warrantless seizure of cellphone records alleged to link the Petitioner to the charged crimes." He asserts that the collection of these phone records violated his Fourth Amendment rights.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction

court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures. See U.S. Const. amend. IV; Tenn. Const. art. I, § 7. "These constitutional provisions are designed to 'safeguard the privacy and security of individuals against

arbitrary invasions of government officials.'" State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998) (quoting Camara v. Municipal Court, 387 U.S. 523, 528 (1967)). Determining whether a governmental action constitutes a search requires an inquiry into whether the individual had a subjective expectation of privacy that society is prepared to consider reasonable. State v. Munn, 56 S.W.3d 486, 494 (Tenn. 2001). "[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." Smith v. Maryland, 442 U.S. 735, 743-44 (1979).

Initially, we note that because the Petitioner is alleging ineffective assistance of counsel in the guilty plea context, he bears the burden of establishing that but for trial counsel's alleged error, he would not have pled guilty and insisted on going to trial. Id. However, the Petitioner put on no evidence at the post-conviction hearing suggesting that he would not have pled guilty had counsel filed the desired motion. Moreover, he does not suggest in his brief on appeal that he would have proceeded to trial if the motion to suppress had been filed. The lack of any evidence suggesting that the Petitioner would have taken his case to trial had the desired motion been filed prevents him from establishing the prejudice prong of Strickland and is fatal to his claim of ineffective assistance of counsel.

Even if this court were to conclude that the Petitioner established that he would have gone to trial if the motion to suppress had been filed, his claim of ineffective assistance of counsel nonetheless fails because the desired motion to suppress would not have been granted. Fourth Amendment jurisprudence leads to the conclusion that the Petitioner did not have a legitimate expectation of privacy in the records he claims trial counsel should have sought to have suppressed. The records consist solely of information that the Petitioner voluntarily turned over to a third party, the wireless provider. Such information is generally not protected by the Fourth Amendment. See Smith, 442 U.S. at 743-44. This court has previously concluded that no reasonable expectation of privacy exists in telephone records maintained by a third party. State v. Hodgkinson, 778 S.W.2d 54, 62 (Tenn. Crim. App. 1989). By using a cell phone, the Petitioner willingly exposed identifying information to his wireless provider, thereby assuming the risk that this information might be revealed to the government and rendering his expectation of privacy in this information unreasonable. Smith, 442 U.S. at 744. Trial counsel's decision not to file a non-meritorious motion to suppress was not deficient performance.

The Petitioner attempts to side-step Smith by citing to Riley, 573 U.S. at 373, but his reliance on that case is misplaced. In Riley, the Supreme Court held that law enforcement could not search a cell phone for the information contained on it without a warrant using the search incident to arrest exception to the warrant requirement. Id. at 401-03. In reaching its decision, the Court was concerned that the information contained

on a modern cell phone includes "the privacies of life[.]" Id. at 403. However, in this case, law enforcement did not execute a search of all the information stored on the Petitioner's cell phone. The records obtained by law enforcement do not implicate the "privacies of life" in the same manner as a search of all information stored on one's cell phone.[1]

Finally, we observe that the Petitioner has filed a pro se reply brief in which he claims that he was denied his right to represent himself and raises issues not presented in his initial brief filed by appointed counsel. We note that these issues were raised in the Petitioner's pro se petition, and the post-conviction court determined that the Petitioner failed to present clear and convincing proof entitling him to relief. Lack of conformity with the Rules of Appellate Procedure notwithstanding, we have reviewed the Petitioner's additional claims, and the record supports the post-conviction court's determination.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the denial of the petition.

_____
ALAN E. GLENN, JUDGE

---

[1] The Petitioner also references Carpenter in support of his ineffective assistance of counsel claim. As noted by the post-conviction court, Carpenter had not been decided at the time trial counsel represented the Petitioner. Therefore, the holding of Carpenter, even assuming it would make the desired motion to suppress meritorious, does not render trial counsel's actions deficient.